(Not for Publication)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

_____
THE TOWNSHIP OF HAMILTON,          :
                                   :
              Plaintiff,           :
                                   :
         v.                        :        Civil No. 05-02519 (RBK)
                                   :
                                   :
ZURICH AMERICAN INSURANCE          :
COMPANY,                           :
                                   :
              Defendant.           :
_____:

**Appearances:**

Norman Lee Zlotnick, Esq.
MAIRONE, BIEL, ZLOTNICK & FEINBERG
3201 Atlantic Avenue
Atlantic City, NJ 08401
Attorney for Plaintiffs

William F. Stewart, Esq.
COZEN & O'CONNOR, PC
457 Haddonfield Road, Suite 300
P.O. Box 5459
Cherry Hill, NJ 08002-2220
Attorney for Defendants

## O P I N I O N

**Kugler,** United States District Judge:

In this contract case arising from an insurance coverage dispute, Plaintiff Hamilton Township seeks coverage under a policy by Defendant Zurich Insurance Company for losses incurred when Hamilton's Town Hall sustained mold damage.  Defendant moves

for summary judgment, arguing that Plaintiff's suit is barred by the policy's Suit Limitations Clause.  For the reasons expressed below, the Court grants Defendant's motion for summary judgment.

## I.  BACKGROUND

This action stems from a dispute regarding insurance coverage for mold damage in Plaintiff Hamilton Township's ("Hamilton") Town Hall ("Town Hall"), located at 6101 Thirteenth Street, Mays Landing, New Jersey. Plaintiff, a municipal corporation existing under the laws of New Jersey, purchased an insurance policy for the property from Defendant Zurich Insurance Company ("Zurich"), a corporation existing under the laws of New York with its principal place of business in Illinois.  The premium for the policy was $3,788,242, and the policy was effective from December 31, 2000 until December 31, 2001.

By September 25, 2001, Plaintiff was aware of a mold problem in Town Hall. Plaintiff hired Brinkerhoff Environmental Services, Inc., ("Brinkerhoff") to conduct an indoor air quality investigation in Town Hall by September 25, 2001. Brinkerhoff's report indicates that the impetus for their investigation was the visible manifestation of mold in the basement of Town Hall.  In addition, Hamilton employees testified that mold was visible on pipe wrap in the basement of Town Hall by September 2001, and that employees in Town Hall complained of health problems associated with the air quality in the building, such as colds

2

and sinus infections.  Brinkerhoff concluded that the bacteria and fungi levels in the basement were not "excessive," and recommended that Hamilton spray the affected areas in the basement with a bleach solution or white vinegar to prevent future contamination.  Hamilton followed Brinkerhoff's recommendation.

Between September 1, 2002 and September 30, 2002, Hamilton employees notified Plaintiff that mold was visible on the grates to the ventilation system, and that air quality problems existed in administrative offices due to mold and mildew.  Shortly thereafter, Plaintiff hired Coastal Environmental Compliance, LLC ("Coastal") to perform an indoor air quality investigation in Town Hall.  Coastal reported "heavy mold growth" in the basement, as well as the presence of mold throughout the building.  Coastal recommended microbial remediation throughout the building, as well as HVAC evaluation and cleaning.

On October 17, 2002, Plaintiff provided notice of the mold damage to Zurich.[1]  This notice consisted of a New Claim form, a Property Loss Notice, and an Accident Investigation Report. Zurich responded by hiring an Independent Adjuster ("IA") to assist Zurich with the investigation of the claim.  The IA

---

[1]   Plaintiff initially attempted to transmit these documents to Zurich via facsimile ("fax"). The cover sheet for the fax indicates that the fax number Plaintiff's agent used on October 17, 2002 was incorrect.  Plaintiff did not successfully transmit the documents until October 24, 2002.

retained an engineer and a mold remediation expert, International Environmental Services, Inc. ("IES").  IES sent two representatives to Town Hall to investigate, and each rendered a report, one on June 23, 2003 and the other on July 17, 2003.

Based on the experts' findings, the IA declined coverage in a letter dated September 10, 2003 which Plaintiff received no later than September 12, 2003.  Specifically, the letter stated, "This letter is to advise you that we have completed our inquiries into the circumstances surrounding your claim.  Based on our investigation, it has been determined that your claim for mold will not be covered."  (Def.'s Br. Summ. J. Ex. K.)  The IA cited exclusion (2) from the policy which states, "errors in design, plan, specification or testing errors in processing, faulty workmanship or faulty materials, unless loss or damage from a peril insured herein ensues and then this policy shall cover for such ensuing loss or damage." (Id.) The letter indicated that the expert reports revealed that the mold damage was the result of improperly designed air ducts.  Although the letter that declined coverage did not specifically notify Plaintiff of the one-year limitation on the right to sue, the letter reserved all of Defendant's rights under the terms and conditions of the policy and applicable law, both of which contain the one-year limitation on the right to sue.

Plaintiff and Defendant engaged in a series of

4

correspondences throughout 2004, in which Plaintiff attempted to obtain the reports upon which the IA relied in reaching its decision to decline coverage.  Plaintiff indicated that Hamilton would not "accept" Zurich's decision, but Plaintiff did not file suit until December 1, 2004.  On March 15, 2005, Zurich wrote Plaintiff and noted that the letter "reaffirm[ed] its earlier denial." (Pl.'s Br. Opp'n. Summ. J. Ex. K.)

Plaintiff commenced this action in the Superior Court of New Jersey, Law Division, Atlantic County on December 1, 2004. Plaintiff filed an amended complaint on April 11, 2005, because Plaintiff failed to serve the Defendant with the initial complaint.  On May 13, 2005, Zurich removed the action to the United States District Court, District of New Jersey, pursuant to 28 U.S.C. §§ 1332(a) and 1441(b).

## II.   STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if it may affect the outcome of the suit under the

5

applicable law.  Id.  In deciding whether there is a disputed
issue of material fact, a court must view the facts and all
reasonable inferences in a light most favorable to the nonmoving
party.  Id. at 250.

The moving party always "bears the initial responsibility of
informing the district court of the basis for its motion, and
identifying those portions of the 'pleadings, depositions,
answers to interrogatories, and admissions on file, together with
the affidavits, if any,' which it believes demonstrate the
absence of a genuine issue of material fact."  Celotex Corp. v.
Catrett, 477 U.S. 317, 323 (1986).  However, where the nonmoving
party bears the burden of persuasion at trial, "the burden on the
moving party may be discharged by 'showing'--that is, pointing
out to the district court--that there is an absence of evidence
to support the nonmoving party's case."  Id. at 325.  The non-
moving party "may not rest upon the mere allegations or denials
of" its pleadings and must present more than just "bare
assertions, conclusory allegations or suspicions" to establish
the existence of a genuine issue of material of fact.  Fed. R.
Civ. P. 56(e).

In deciding the merits of a party's motion for summary
judgment, the court's role is not to evaluate the evidence and
decide the truth of the matter, but to determine whether there is
a genuine issue for trial.  Anderson, 477 U.S. at 249.

Credibility determinations are the province of the factfinder, not the district court.  BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

## III. DISCUSSION

Zurich argues it is entitled to summary judgment because Plaintiff failed to file suit within the one-year limitation on the right to sue.  Plaintiff's insurance policy states

> No suit, action or proceeding for the recovery of any claim under this policy shall be sustainable in any court of law or equity unless the same be commenced within twelve (12) months next after discovery by the Insured of the occurrence which gives rise to the claim.  Provided, however, that if by the laws of the State within which this policy is issued is invalid, then any such claims shall be void unless such action, suit or proceeding be commenced within the shortest limit of time permitted by the laws of such State.

Plaintiff asserts that Zurich did not give a clear, definitive declination of coverage until its March 15, 2005 correspondence.  As support for this contention, Plaintiff asserts that there was ongoing "uncertainty" about Zurich's intention to cover the loss until the March 2005 letter.  Moreover, Plaintiff asserts that formal declinations of coverage must inform the insured of temporal limitations on the right to sue.  Plaintiff states that because Zurich's March 15, 2005 letter is the only time Zurich notified Hamilton of the limitation on the right to sue, the "operative" declination of coverage did not occur until the latter date. Zurich, however, maintains that its letter dated September 10, 2003 was the

7

operative declination of coverage, and its letter dated March 15, 2005 was merely a reaffirmation of that declination.

In Peloso v. Hartford Fire Insurance Co., 56 N.J. 514, 521 (1970), the Supreme Court of New Jersey held that the statute of limitations period imposed by a suit limitations provision begins to run on the date of the incident giving rise to the casualty, but tolls from the time the insured gives notice to the insurer until the insurer formally declines coverage. See also Gahnney v. State Farm Ins. Co., 56 F. Supp. 2d 491, 495-96 (D.N.J. 1999).[2]

Although the Peloso Court defined the parameters of the suit limitations, the Court failed to address what suffices as a formal letter of declination of coverage. The Supreme Court of New Jersey previously addressed the issue in Bowler v. Fidelity & Casualty Co. of New York, 53 N.J. 313, 328 (1969). In Bowler, the Court stated that an insurer must not only notify the insured of its decision to decline coverage, but the insurer must include the reasons underlying its decision, as well as a clear statement that if the insured wishes to enforce the claim, the insured must

_____

[2]    The parties do not agree as to the date that the casualty arose. The Court need not decide this issue, because even assuming the casualty arose on the date most favorable to Plaintiff, September 30, 2002, which Plaintiff asserts as the manifestation date of the loss, Plaintiff is still unable to survive summary judgment because of the suit limitations provision.
    Moreover, the Court does not decide whether a manifestation date of September 30, 2002 would be covered by the Zurich policy in the first instance, given the policy's period of December 31, 2000 through December 31, 2001.

obtain the services of an attorney and sue within the "appropriate time." Id. A search of subsequent cases reveals that no courts followed the Bowler decision. See, e.g., Gahnney, 56 F. Supp. 2d at 497 (holding that where the insured should have known of the limitations on a right to sue, such as when the provision is printed on the policy itself, and where there is no evidence that the insurer unjustifiably withheld such information from the insured, the insurer is not required to provide the insured with additional notice of the limitations provision); Ali, Inc. v. Generali, 954 F. Supp. 118, 120 (D.N.J. 1997) (finding that the language in Bowler was merely dicta and that it should not be applied literally). Moreover, the New Jersey Supreme Court decided Peloso after Bowler, and Peloso only requires the insurer to notify the insured "in writing that liability was denied." Peloso, 56 N.J. at 521. Therefore, New Jersey law does not require an insurer to notify the insured of limitations on the right to sue in a letter declining coverage, assuming the insured already has notice of the suit limitation provision.

Finally, Plaintiff states that the New Jersey Administrative Code requires an insurer to notify the insured of any limitation on the right to sue. N.J. ADMIN. CODE § 11:2-17.8(c) ("In any case where a first party claim is denied or a compromise is offered, the insurer shall notify the first party claimant of any

9

applicable policy provision limiting such claimant's right to sue
the insurer."). However, the provision also states that it does
"not apply to commercial property and liability policies for
which the annual premium is more than $10,000 and where the claim
is made by the commercial insured." Id. § 11:2-17.2. Plaintiff's
policy premium was $3,788,242, well above the $10,000 threshold.
Moreover, Plaintiff is the commercial entity insured under the
policy, and Plaintiff made the claim. Therefore, the
requirements of New Jersey Administrative Code § 11:2-17.8(c) do
not apply to Zurich in this instance.

     In this case, Zurich's letter dated September 10, 2003 meets
the requirements for a valid declination letter. The letter
clearly and unambiguously states that "your claim for mold will
not be covered." (Def.'s Br. Summ. J. Ex. K.) The letter
explains the reasons underlying the decision not to cover the
mold claim. Moreover, the letter clearly refers Plaintiff back
to the terms and conditions of the initial policy, as well as any
pertinent statutes. Because the September 10, 2003 letter was a
valid declination of coverage, the letter triggered the suit
limitations provision on the right to sue.

     Plaintiff did not file suit until December 1, 2004. Viewing
the facts in the light most favorable to Plaintiff, Plaintiff

waited almost fifteen months[3] after Zurich declined to cover the claim for the mold damage to file suit.  This is well beyond the one-year limitation on the right to file suit.

In sum, Plaintiff failed to offer sufficient evidence such that a reasonable fact finder could conclude that the Plaintiff filed this complaint within the one-year limitation on the right to sue.  Therefore, Plaintiff's claim cannot survive Defendant's motion for summary judgment.

## IV.  CONCLUSION

For the foregoing reasons, the Court grants Defendant's motion for summary judgment.


Dated: 9/5/2006                          s/Robert B. Kugler

                                         ROBERT B. KUGLER

                                         U.S. DISTRICT JUDGE

---

[3]    This assumes the Plaintiff's proposed manifestation date of September 30, 2002.

11